CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JAN 26 2006
JOHN F. CORCORAN, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MAYS WILSON TATE, JR.<br>Petitioner, | )<br>) Case No. 7:05CV00422<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| WILLIAM PAGE TRUE, et al.,<br>Respondent. | ) By: Hon. Jackson L. Kiser<br>) Senior United States District Judge |

Mays Wilson Tate, Jr., a Virginia inmate proceeding with counsel, filed this action as a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Tate challenges the validity of his convictions in the Circuit Court for the County of Buckingham. The petition is presently before the court on the respondents' motion to dismiss. For the reasons set forth below, I will grant the respondents' motion.

## PROCEDURAL HISTORY

Tate was originally tried by a jury in the Circuit Court for the County of Buckingham in May 1995. Tate was found guilty of the capital murder of Gloria Stinson, the first degree murder of Roberta Stinson, the second degree murder of Clarence Stinson, three counts of using a firearm in the commission of a felony, breaking and entering while armed with a deadly weapon, and grand larceny of an automobile. Tate received a total term of imprisonment of three life sentences plus forty-six years.

On June 25, 1996, Tate's convictions were reversed by the Court of Appeals of Virginia. Tate was retried in January 1997. The case ended in a mistrial when it was discovered that Tate was not taking his anti-psychotic medication. The trial court determined that Tate was not competent to stand trial without the medication.

Tate was tried for third time in October 1997. On October 31, 1997, a jury found Tate guilty of three counts of second degree murder, one count of grand larceny, and one count of breaking and entering. Tate was sentenced to a total term of imprisonment of 100 years.

Tate appealed his convictions to the Court of Appeals of Virginia. On July 12, 1998, a judge on the Court of Appeals granted Tate's petition for appeal with respect to the issue of whether the trial court erred in striking the defendant's testimony. The remainder of the petition for appeal was denied. The judge's decision to deny the remainder of the petition was adopted by a three-judge panel of the Court of Appeals on August 13, 1998. A three-judge panel subsequently affirmed Tate's convictions on March 30, 1999. Upon rehearing en banc, the panel's decision was affirmed. Tate then filed a petition for appeal in the Supreme Court of Virginia. On April 24, 2000, the petition was refused.

On April 19, 2001, Tate, proceeding with counsel, filed a petition for writ of habeas corpus in the Circuit Court for the County of Buckingham. The state petition included the following claims:

1. The petitioner's right to be present at trial and confront witnesses under the Sixth and Fourteenth Amendments was violated; and

2. The petitioner's trial counsel was ineffective for waiving the opportunity to have the petitioner reevaluated to ascertain whether the petitioner remained competent to waive his right to be present during the presentation of the prosecution's case, and for failing to request a continuance or move for a mistrial because the medication that the petitioner was required to take to maintain his competency prevented him from remaining alert enough to assist counsel in the defense of his case.

The petition was dismissed by the Circuit Court on October 25, 2004. Tate appealed the dismissal of the petition to the Supreme Court of Virginia. Tate's petition for appeal was refused on April 14, 2005. On June 17, 2005, the Supreme Court denied Tate's petition for rehearing.

Tate filed the instant petition on June 20, 2005. The petition asserts the following claims:

1. The petitioner's right to be present at trial and confront witnesses under the Sixth and Fourteenth Amendments was violated;

2. The Commonwealth of Virginia interfered with the petitioner's right to effective assistance of counsel by involuntarily administering the anti-psychotic drug Mellaril to make the petitioner competent to stand trial; and

3. In light of the side effects created by the medication, trial counsel was ineffective for waiving the opportunity to have the petitioner reevaluated to ascertain whether the petitioner remained competent, for failing to request a continuance or move for a mistrial, and for failing to object on confrontation, due process, or competency grounds to the trial proceeding in the petitioner's absence or while the petitioner was present but not alert enough to assist counsel in the defense of his case.

The petition is presently before the court on the respondents' motion to dismiss.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254(b), a petitioner challenging a state court conviction must first exhaust remedies available in the courts of the state in which he was convicted before seeking federal habeas review. See Preiser v. Rodriguez, 411 U.S. 475 (1973). When a claim has been adjudicated on the merits by a state court, this court may grant habeas relief only if the state court's adjudication of the claims "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law," or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). The United States Supreme Court has explained that this statute "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000) (internal citations omitted). Consequently,

3

Case 7:05-cv-00422-JLK-mfu  Document 17  Filed 01/26/06  Page 3 of 9  Pageid#: 115

"state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Id. at 389.

## DISCUSSION

A.    Claim 1

Tate elected to remain in his cell during a portion of the trial. Tate now alleges in his first claim that his right to be present at trial and confront witnesses was violated. Tate previously raised this claim in his state habeas petition. The state habeas court concluded that the claim was without merit. The court determined that Tate knowingly and voluntarily waived this constitutional right.

Having reviewed the record, I conclude that the state habeas court's decision did not involve an unreasonable application of federal law or an unreasonable determination of the facts. While "[t]he right of a criminal defendant to be present at his own trial is beyond dispute,"this right may be waived by the defendant. United States v. Lawrence, 161 F.3d 250, 255 (4th Cir. 1998). In this case, the record establishes that Tate waived his right to be present at trial and confront witnesses, and that Tate's waiver was knowing and voluntary. The trial transcript indicates that Tate remained in the courtroom during the first day of trial, as well as a portion of the second day. Following a morning recess during the second day, Tate asked to address the trial court. (Oct. 28, 1997 Tr. at 92). Tate stated that he kept falling asleep as a result of his medication, and that he wanted to stay in his holding cell until the defense began its case. (Tr. at 93). Tate explained that he and his trial counsel had "discussed everything," that they had gone over everything "several different times," and that there was "nothing that [he] would miss." (Tr. at 93). The trial court advised Tate that the Constitution afforded him the right to be present at

4

trial and confront witnesses. (Tr. at 96-97). Tate unequivocally stated that he understood his rights and that he wanted to waive them. (Tr. at 96-97). On the third day of trial, Tate again stated that he did not want to sit in the courtroom until the defense began its case. (Oct. 29, 1997 Tr. at 6). Upon being questioned by the trial court, Tate stated that he understood the constitutional rights at issue, and that he wanted to waive them. (Tr. at 7-8). On the fourth day of trial, Tate chose to remain in the courtroom. (Oct. 30, 1997 Tr. at 4).

Tate argues that his waiver was involuntary because he was "laboring under the influence of Mellaril" during trial. However, I disagree. While the United States Supreme Court has noted that certain dosages of Mellaril can cause drowsiness or confusion, and in "extreme cases," affect thought processes, Riggins v. Nevada, 504 U.S. 127, 137 (1992), the mere fact that a criminal defendant is taking Mellaril does not establish that he is incompetent, or that he is incapable of understanding or exercising his constitutional rights. See Burket v. Angelone, 208 F.3d 172, 192 (4th Cir. 2000) ("[T]he fact that the petitioner has been treated with anti-psychotic drugs does not per se render him incompetent to stand trial."). The record reveals that Tate underwent a psychiatric evaluation the week before trial, which revealed that he was competent to stand trial. (Circuit Court R. at 220). Prior to trial, Tate was questioned by the trial court. Tate advised the trial court that he felt comfortable proceeding with trial, that he understood the nature of the offenses pending against him, and that he could effectively communicate with his attorney. (Oct. 27, 1997 Tr. at 10-11). During his arraignment, Tate responded appropriately to the trial court's questions. (Oct. 27, 1997 Tr. at 15-16). The trial court stated that he felt "absolutely comfortable with [Tate's] competency to stand trial" and "with his ability to assist in the defense." (Oct. 28, 1997 Tr. at 99). Based on this review of the record, I conclude that Tate

5

knowingly and voluntarily waived his right to be present at trial and confront witnesses. Accordingly, Tate's first claim must be dismissed.

B. Claim 2

In his second claim, Tate alleges that the Commonwealth interfered with his right to effective assistance of counsel by "involuntarily administering" the anti-psychotic drug Mellaril in order to make Tate competent to stand trial. Upon reviewing the record, I agree with the respondents that Tate did not properly present this claim as part of his state habeas proceedings, and that this claim is procedurally defaulted.

In order to seek federal habeas review of a state court conviction, a petitioner must first exhaust available state court remedies. 28 U.S.C. § 2254(b). State courts must be "provided a full and fair opportunity to review earlier state court proceedings." Whittlesey v. Circuit Court for Baltimore County, 897 F.2d 143, 145 (4th Cir. 1990). As the United States Court of Appeals for the Fourth Circuit explained in Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994) (internal citations omitted), "the exhaustion requirement demands that the petitioner do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined."

Contrary to Tate's assertions, his second claim was not clearly presented as a ground for relief in his state habeas petition. While Tate contends that the state petition contained sufficient facts to assert a claim of state interference with effective assistance of counsel, a habeas petitioner "cannot simply apprise the state court of the facts underlying a claimed constitutional violation." Id. at 994. Instead, "the petitioner must also explain how those alleged events establish a violation of his constitutional rights." Id. It was not until Tate filed his response to the respondents' motion to dismiss that he asserted that the Commonwealth interfered with his

6

right to effective assistance of counsel by administering the Mellaril. Even if this assertion was construed as an additional claim, the claim still would not have been properly before the state habeas court. A petition, like any other pleading, may not be amended without leave of court. See Virginia Sup. Ct. R. 1:8. Thus, the state habeas court lacked jurisdiction to adjudicate any new claim raised by Tate's response to the respondents' motion to dismiss. See Mallory, 27 F.3d at 995.

Since Tate failed to properly raise his second claim in his state habeas petition, the claim is procedurally defaulted. If Tate now attempted to raise the claim, it would be barred by Virginia Code § 8.01-654(B)(2).[*] As a result, the court may not review the claim unless Tate demonstrates "cause for, and resulting prejudice from, the default or that he has suffered a fundamental miscarriage of justice." Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998). Since Tate has not made either showing, his second claim must be dismissed.

C. Claim 3

In his third claim, Tate alleges that his trial counsel was ineffective for waiving the opportunity to have Tate reevaluated to ascertain whether he remained competent, for failing to request a continuance or move for a mistrial, and for failing to object on confrontation, due process, or competency grounds to the trial proceeding in Tate's absence or while Tate was present but not alert enough to assist counsel in the defense of his case. A criminal defendant's right to effective assistance of counsel is protected by the Sixth Amendment to the United States Constitution. In Strickland v. Washington, 466 U.S. 668, 669 (1984), the United States Supreme

---

[*] Section 8.01-654(B)(2) provides that "[n]o writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition."

7

Court set forth a two-prong test for evaluating ineffective assistance claims. The defendant must show that his counsel's performance fell "below an objective standard of reasonableness," and that the "deficient performance" must have "prejudiced the defense." Id. at 687-688.

Tate presented this claim as part of the state habeas proceedings. The state habeas court determined that Tate's allegations failed to satisfy the Strickland test. The state habeas court noted that it was unclear how Tate would have benefitted from another medical evaluation at trial, since he was taking his anti-psychotic medication and since he had recently been found competent to stand trial. The state habeas court also noted that it was unclear how Tate would have benefitted from a motion for a continuance or mistrial. The state habeas court determined that a mistrial was not in order, since the trial court extensively questioned Tate before permitting him to remain outside of the courtroom, in an attempt to determine whether Tate was voluntarily and knowingly waiving his right to be present at trial. Additionally, the state habeas court emphasized that Tate's trial counsel was able to communicate with him, and that Tate's trial counsel did not question his competency. In an affidavit submitted to the state habeas court, Tate's trial counsel stated that he believed Tate understood what was happening at trial, and that there was never a time when counsel needed to consult with Tate when Tate was unavailable. Tate's counsel also stated that he spoke with Tate each night about the evidence presented during trial, and that he was "largely indifferent." Counsel explained that Tate's decision to remain in his cell made sense at the time, since counsel could explain to the jury that Tate's sleepiness was due the medication he was taking. (Resp. State Habeas Supp. Motion Exhibit A).

Having reviewed the record, I conclude that the state habeas court's decision did not involve an unreasonable application of federal law or an unreasonable determination of the facts. The record demonstrates that Tate was competent to stand trial, and that he knowingly and

voluntarily waived his right to be present at trial and confront witnesses. Consequently, Tate's trial counsel was not ineffective for failing to request an additional competency evaluation, move for a mistrial, or object to the trial proceeding in Tate's absence. Accordingly, Tate's third claim must be dismissed.

## CONCLUSION

For the reasons stated, I will grant the respondent's motion to dismiss. The Clerk is directed to send certified copies of this opinion and the accompanying order to the petitioner and all counsel of record.

ENTER: This 26th day of January, 2006.

*/s/ Jackson L. Kiser*
Senior United States District Judge